Mr. Greenlee. Good morning, Your Honors, and may it please the Court. My name is Andrew Greenlee and I'm here on behalf of Jose Benitez. The government made three stipulations in open court at the change of plea hearing. First, it stipulated that the use of a firearm is an element of the offense as it alleged in this failure to prove the use of a firearm during the course of trial could be a defense to the aggravated bank robbery charge. And third, and this is really the most crucial, it said the government would not argue to the jury that the instrument used in the bank robbery was anything other than a firearm. Mr. Benitez took the government at its word. He relied on those assurances. That stipulation was made before the guilty plea proceedings, was it not? He arrived at court with the intention of pleading guilty that day. It was at the... The stipulation was before that, isn't it not correct? That's correct, Your Honor, that's correct, but it was never withdrawn. Stipulations are just as binding in criminal cases as they are in civil cases. And Mr. Benitez predicated his entire theory of defense on the government's assurances that it would never come into court and argued to the jury that it was anything other than a firearm. Didn't the defendant have reason to know, though, that the court was still up in the air on that issue? I'm glad... Maybe that's a good way to put it, that the court was still up in the air. There was no definitive ruling by the district court regarding surplusage, regarding constructive amendment. I have the ruling... This is not a case like Cancelliere where it was the end of the trial before the indictment was amended. It is a case like Cancelliere. In fact, it's very close on the facts of Cancelliere. The indictment was read to the jury as charged with the firearm language during the broad ire and the initial charge to the jury. Before the case started, it was read to the jury. Then, if you look at the verdict form, that firearm language is taken out of the verdict form. And they found him guilty without the narrowing language of, to wit, a firearm. So it is like Cancelliere where the language was omitted at the end of the case. Also in Cancelliere, the extra language heightened the mens rea, but that's not the case here, is it? It's not the case here. It's not... It doesn't go to the mens rea. It is more in that regard like the Narog case, where it was... There's this broad statutory language that's used, and then there's a narrowing construction at the very end. In Narog, it was, to wit, methamphetamine. So they specified the controlled substance that they had possessed. It was methamphetamine. Here they said, to wit, the dangerous device was a firearm. But arguably, in Narog, that was also a heightening of the mens rea because the defendant had to know that it was meth. That's not true. All that was required to be proved in Narog was that there was a controlled substance that they used to make a controlled substance. That's all they statutorily had to prove. So there was no... There was no statutory requirement that there was a... That they had to prove that it was methamphetamine. I went and looked at the jury charge to see if it talked about the firearm, and best I could tell, it just talked about dangerous weapon when it said what the elements of the bank robbery offense was. That's correct. Are you aware that there was no reference in the charge to the jury that the elements of the bank robbery offense in count one required a firearm? It just said dangerous weapon. Exactly. That's my point. And the instructions went out with the jury, right? That's correct. In writing. And you objected to that because it allowed the jury to find guilt on count one with a dangerous weapon but not a firearm. That's exactly right. And in fact, if I could focus on the jury instruction here, the part of the jury instruction that was most damaging is that the jury was instructed that, quote, the use of a dangerous weapon or device does not require proof that the dangerous weapon or device is actually capable of putting the life of a person in jeopardy. So that negates his I would like to go back to the post-cancellary, if I could, for a minute, because this court, in various cases post-cancellary, they said that it stands for the proposition that where somebody's entire defense is predicated on the surplusage, that even if it is surplusage, that can still be a constructive amendment. Now, I'm not sure whether that makes, doctrinally, whether that makes sense. To me, that would be a prejudicial variance case because he's prejudiced by the variance, but that's what post-cancellary has kind of come to me, and it's sort of an exception to the surplusage doctrine. So when someone predicates their entire defense, as in cancellary, where it was knowingly... You knew that the district court, the district court at the plea proceedings, told you that you could plead to count one without pleading to the fact that it was a firearm. That's right. And that should have told you that he thought it was surplusage. And therefore, it doesn't seem to me you can claim that you were surprised by what he did. I disagree with you, and let me explain why. What the district court said is that, however, he will have to be able to establish all of the elements up to and including that the weapon used in the bank robbery was a dangerous weapon. The district court went on to say, I would suggest that counsel, you consult with Mr. Benitez so that he understands that entering a plea to the bank robbery count and leaving just the possession of a firearm during the commission of the bank robbery is establishing a lot of the elements to that second offense. But not that it was a firearm. But she didn't say one way or the other. And look, the government probably could have stood up in open court and waved the plea agreement around and essentially directed verdict on the second count. There was no admonition. So there was an admonition on the one way, hey, you know, be careful because if you plead guilty to this, it's establishing a lot of the elements of the second offense. But there was no admonition going the other way that if you take it to trial, they will be able to prove that it was a toy, and that's enough sufficient to convict him. Let me, I think you have a strong case, just frankly on the law, without regard to this business about your being surprised and prejudiced. Because we've got several cases, Weissman and I forget, Narag, right directly on point. But it seems to me we have a lot of other cases that seem to be in tension with those, namely those cases that say in order to be a constructive amendment, there has to be a change with respect to the elements. And of course, firearm, well, no, is not an element. It is a dangerous weapon like the district court ruled. How do you deal with those other cases, and do we have tension amongst our cases? I think there is some tension. And, you know, as a practitioner, I can't say that the cases are polluted as to what exactly the prevailing rule is. The rule that we would suggest, and this is consistent with Narag, is that changing the means of satisfying an element can be a constructive amendment if the jury is allowed to convict based on an uncharged set of facts that expands the basis for conviction with respect to that element. So in Narag, to wit methamphetamine, that you have the broad statutory language, and then you narrow it in. You kind of irrigate upon yourself a higher burden of proof. So to wit methamphetamine. In Weissman, they said to wit the DeCaval, whatever the crime family was, DeCaval, DeCavalcanti crime family. They could have just said Areco Enterprise, but they specified the exact one. To me, it's indistinguishable from those cases. And then the fact that he was surprised and prejudiced by it, that's where Cancellieri comes in, because his entire defense was based on this constructive, disproving this, even if it is surplusage, this extra language. And in addition to that, in addition to all that, we have the stipulations from the government on the other side. So to me, this is a stronger case than all of those cases. And I think that there's really no way that the government can argue that it's not a constructive. So what would happen here if you were to prevail? They'd reindict him and take out the firearm, right? Well, you know, I'll leave that for the government. I know, but let's talk about the possibilities. You've been acquitted on carrying the firearm during the course of a crime of violence. So they could reindict Count 1, right? Or they could just remand Count 1. I suppose, yeah, they could reindict it and omit that language. Yeah, right. All right. And then we have a trial. It was a two-day trial. Okay. And as I understand the sentencing on Count 1, the district court didn't give a firearm enhancement. That would have been six levels. Didn't give an obstruction. Didn't give any of the enhancements. Is that not correct? That's correct, but it didn't. And back on re—he could have, by preponderance of the evidence, found that this really was a firearm. Right. I mean, he could—this next time, they could find, by preponderance of evidence, it really was a firearm, correct? That's a possibility? That's a possibility. It's also a possibility. He could just plead guilty to it. It's also a possibility, and we wouldn't really fight too hard if you accepted the government's idea. I'm just worried about what you're putting your client at risk on going back. I'm just trying to see if there isn't some risk here of a greater sentence. If it were the case that they superseded— Isn't there a risk of a greater sentence here on remand? I don't believe that. If the court gave him a greater sentence—first of all, the court varied upwards, right? So it enhanced a very severe sentence on Mr.— What is the sentence? I believe it was 121 months, and I might be wrong on that. But there was an upward variance imposed here. So even if the court didn't fight— It was a 67-months guideline range. Or actually, it was a she. Right, and varied upward from there. Do you appeal the sentence at all? We didn't appeal the sentence. Because you got no enhancements at all, base level. There was nothing to appeal. Okay. But I would say— You've answered my questions. You're over.  You were answering. It's not a problem. Thank you. I reserve the remainder. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Holly Gershow on behalf of the United States. There was only one dangerous weapon involved in this case. The gun that Benitez held in his hand while robbing Iberia Bank on October 8, 2014. That is the weapon the grand jury charged, and that is the weapon the United States proved at trial. That gun that Benitez held in his hand, that he pointed at the bank employees, that he threatened them with, that caused them to believe that he would kill them if they didn't do what he said. No constructive amendment of the indictment therefore occurred because there was no danger that Benitez was convicted of a crime different than that that was charged in the indictment. Moreover, based on the district court's ruling that the firearm language was surplusage and that Benitez could plead guilty to armed bank robbery without admitting that he used a firearm. Based on that ruling, Benitez had no reason to believe that he would be able to defend against the armed bank robbery count on the grounds that he used a replica firearm. In this case, therefore, it's not Cancellier and it's not Narog. It seems to me, though, that I'm having a hard time getting around Narog and Weissman. I mean, what happened here is precisely the same thing that happened in Narog where you've got the general language and the narrower language. Then the district court's instruction takes the narrower language out. I know that we have some cases that say that it's really the elements that count and not the surplusage. That makes a lot of sense to me, but it seems to me our cases won't let us do that. Even if there is some tension in our cases, it seems to me that the old Supreme Court case, Styrone, resolves it in your opponent's favor, not in your favor. That case, you remember, the indictment alleged that interstate commerce was satisfied by sand and the district court allowed the jury to satisfy the interstate commerce element by steel. So it seems to me that steel and sand certainly were not elements. It was interstate commerce that was the element. So it seems to me Styrone stands for the proposition that it doesn't have to do with the element, that it doesn't have to change the element. It just, if you let the jury find a different means of satisfying the element, that's a constructive amendment per se. What's wrong with my thinking? Let me start by addressing Styrone. Your Honor is correct that in Styrone, the indictment charged interference with importation of sand to Pennsylvania and then allowed conviction on the basis of exportation of steel out of Pennsylvania. And what the Supreme Court was troubled with in that case is that the jury could have convicted the defendant on a set of facts wholly and distinctly different from those facts charged by the grand jury. But here there was only one set of facts charged to the grand jury. The robbery of the bank with that dangerous weapon, that gun that Benitez was using to rob the bank. And whether that gun fired bullets, blanks, or BBs made no difference in the context of armed bank robbery where the focus is on how the victims perceived that weapon. And so while in Styrone the defendant could have been convicted on facts that had never even been brought before the grand jury, here the exact facts... I don't think the grand jury in our case knew that what the jury pretty apparently found was that the gun was not a firearm, but it was an imitation gun. But the grand jury is only required to find probable cause to believe... Say that again. The grand jury is only required to find probable cause to believe that the gun was a firearm. And the same facts that established in this case probable cause to believe the gun was a firearm also established probable cause to believe that it was a replica firearm. The video that was shown, the testimony of the bank employees that they believed that this was a real firearm. Now turning to Narog, I don't believe that Narog stands to the proposition that any time the grand jury charges that the United States is required to prove that is. And I think that that is compelled by Dort and some more in which the court said Narog is limited to the crime and circumstances of that case and it doesn't plainly extend to other circumstances such as in Dort when they charged a Taurus pistol. That was in the plain error context. Correct. And it may be true that Narog is not absolutely controlling, but its rationale, it seems to me, is I can't find an intellectually honest distinction. I would point your honor to the fact that in Narog and Weissman, in both cases the jury instructions mimic the language of the indictment as charged. And it was only in response to a jury question in both cases. In Narog the question was do we have to convict if we find that he used methamphetamine specifically. And I think it was the jury question and the court's response to the jury question that it could be any controlled substance is what created the problem in Narog because that left open the possibility that the jury could have convicted of any controlled substance. But here we know that the only dangerous weapons that he could have been convicted of was a real firearm or replica firearm. And I think Benitez concedes as much. And so there's a difference between saying well he could have been convicted on believing that the pseudo-phedrine would be used to manufacture any controlled substance, cocaine, who knows what, who knows what would have been presented to the grand jury. And in this case saying he was only convicted of either a real firearm or a replica firearm and in the context of bank robbery that makes no legal distinction. So for those reasons I would say that Narog doesn't control here and Canceller doesn't control here. And I'd like to address the argument that Benitez made that the United States quote stipulated that it was going to prove these. The United States didn't stipulate. The United States made arguments at the change of plea hearing that Benitez couldn't plead guilty because that would constructively amend the indictment. The district court rejected those arguments and the district court allowed Benitez said you can plead guilty to armed bank robbery as long as you admit up to a dangerous weapon you don't have to admit that it's a firearm. And the United States lost the argument that it made. And so the United States unlike a stipulation in which the United States might be bound to continue to hold to those stipulations the United States isn't required to continue to advance arguments once it is lost in the district court. Once the district court told them this language is surplusage there was no reason to believe that they would have to continue to prove a firearm. Did the district court actually use the word surplusage in the plea proceedings? In the plea proceedings Benitez argued that the language was surplusage and the United States argued that it would be a constructive amendment. The United States submitted a case law saying why it wasn't surplusage. The district court said I've reviewed all of the pleadings and I'm going to allow Benitez to plead guilty to the armed bank robbery without admitting the firearm. So while she did not specifically use the word surplusage I think that that was an implied ruling and in fact when this issue came up at trial the district court said and I think you'll recall that I found this language to be surplusage so certainly the district court felt that she had made that ruling. And again after the district court made that ruling at the change of plea the United States submitted proposed jury instructions and in those proposed jury instructions the United States proposed the standard jury instruction for armed bank robbery with no mention of the firearm language At what point in the trial did that happen? Was it before or after he testified? It was months before trial it was at, it was, well I'm sorry it was two weeks I believe before trial and September 14th was when the United States filed the proposed jury instructions and then on September 21st there was a pre-trial conference and the district court asked Benitez about the jury instructions because Benitez hadn't submitted any of his own proposed instructions and Benitez responded I think the United States proposed standard instructions are fine then at opening statement the the prosecutor said these are the elements of armed bank robbery it requires threatening and assaulting and putting in fear with a dangerous weapon no mention of a firearm for the bank robbery count no objection by Mr. Benitez no objection to Mr. Benitez after the United States concluded its opening statement it wasn't until after the first day of trial that Benitez brought up this potential issue with the jury instruction so I would say that to the extent Benitez was surprised that this wasn't the United States position he wasn't unfairly so When did the district court rule on the jury instruction issue? At the close of trial she made a tentative ruling on the first day of trial said I think you'll recall that this language is surplusage but then sort of said I'll reconsider it and then at the close of it she said I went back I looked at what I had said before and in fact I had said that this was surplusage and also there's this case diverso and therefore this is not an element that the United States had to prove so I'm going to give the standard Sounds like the court didn't definitively rule on the issue then until after the close of evidence It didn't rule definitively on the jury instruction issue but it did rule definitively at the change of plea hearing that the language was surplusage and so the jury instruction issue stemmed directly from that ruling that she had made at the request of Mr. Benitez He was the one who wanted to plead guilty to count one without admitting that it was a firearm and the district court made that ruling at a status conference that he could plead guilty and it wasn't until a month later that he came back and said no I've changed my mind I now want to go to trial so the idea that he made that decision based on what the United States said even though that was several months before and there was this intervening ruling by the district court that this language was surplusage Well what's the law in other circuits about this constructive amendment issue the legal issue Other circuits like our Weissman and Narag cases or are they more like the cases that you would like namely that to be a constructive amendment it has to change the element They are more like the government's position and they're also they for example the second circuit in DiMillo distinguishes between changing an element and changing a means and said in that case they had charged several different types of interstate commerce in the child enticement case they had charged an internet and computer but or some version of interstate commerce but at trial they had proved a different means of interstate commerce which is a cell phone and they said look this is the same set of facts this is not a functionally different crime and therefore no constructive amendment of the indictment What's the name of that case? DiMillo and some more actually this court cited DiMillo in the Samar case when discussing and in Samar it discusses other cases from other circuits that have held that merely changing the means does not constructively amend the indictment the 8th circuit has made a similar ruling in any firearm Let me ask you a hypothetical question what if the indictment had alleged that the dangerous weapon was a knife and the defendant's whole defense was that my fingerprints aren't on the knife it's the fingerprints of some other guy who has been in the United States out of no where I think it would be a variance problem potentially a prejudicial variance depending on what kind of notice the defendant had about the United States but again in this case we charged a firearm we had a 924C offense which required the proving of a firearm so all the evidence the United States was introducing was that it was a firearm the only determination was was this a real firearm or a replica firearm which although that did have significance in the context of 924C had no significance in the context of bank property it was just a simply legally irrelevant fact it would be like if they alleged that the dangerous weapon was red and at trial they proved the dangerous weapon was pink that the defender shouldn't be allowed to put on a defense that says well I should have been acquitted because I should have been able to argue that the weapon was pink and not red so for this reason this is not the kind of case that merits per se reversal this was a case he was is a variance why isn't it pretty clear that there was prejudice because it's pretty apparent to me that the jury found this was not a firearm this was a fake made to look like a firearm why is that not prejudice personally I would disagree with your honor that it is apparent we don't know why the jury made the finding that it found and you can always have inconsistent verdicts it could have been the case that someone on the jury googled 924C and found out that it had a mandatory enhanced sentence so they split the verdict  the jury found that it was unfair surprise and here for the reasons I stated before the defendant wasn't unfairly surprised by or shouldn't have and shouldn't have been surprised really the answer to the question is you can be convicted of bank robbery if it's a toy weapon as long as it's perceived under the law dangerous weapon even if it's a toy if it's perceived by the victim as having been real that's the argument of why there's no prejudice here because it wasn't inconsistent you can be convicted of a toy weapon firearm as a bank robbery that constitutes a dangerous weapon which is another way of saying that it was mere surplusage well I think the case law maybe I'm wrong about that we've said it can be a toy weapon everybody can agree it was a toy weapon they find it in the car I think we had a case one time they actually found it in the car and it was a toy weapon but you still have bank robbery because the victim perceived it so really the verdict here was quite consistent I think they thought it was a toy weapon or at least the government didn't prove I think what the jury did they didn't prove beyond a reasonable doubt that it was a real gun that's what it looks like they did but they convicted him but the first one is a toy weapon I don't think the jury gets into what the sentence is and all that kind of business I think they just thought the government didn't prove for sure it was a real gun but again the there was no prejudice to that because he did admit every element of armed bank robbery yeah he admitted he had a toy weapon yeah it looked like  in the video I looked at I've got a picture of the video it shows I mean it looks like a gun may not have been a gun I have no idea but it sure looks like a big black gun and actually I compared that with a photograph of the daughter and there's markings on the gun that's different than the ones in the photograph of the daughter with her toy gun yeah yeah but any of that I think the jury found the government didn't prove it that it didn't prove that it was a real firearm as opposed to what he said a toy firearm again that that is a likely interpretation of the jury verdict but the jury is a black box we don't know why the jury finds what it finds thank you thank you I'd ask you to affirm Mr. Greenlee you'll have your full five minutes for rebuttal thank you very much I want to just return back to what the government said in the change of plea hearing they said that it could be a defense to the aggravated form of robbery if it was not a firearm okay so this concept that even if first and that's number one number two they said and this is if this isn't a stipulation I don't know what is we would never come into court and argue before the jury that this was anything other than a firearm if that's not a stipulation I don't know what is I want to push back on this this concept that it was a definitive ruling it most certainly was not the word surplusage never came out of the judge's mouth the word constructive amendment never came out of the judge's mouth she just said I will accept your guilty plea and it wasn't even entirely clear to what extent the government would be able to use the indictment to essentially direct a verdict on the 924C count so and if the court has any doubt about that ruling which was completely ambiguous if the court has any doubt go and I would come into the court's attention to look at what his opening statement was the government talked about what their opening statement was but his opening statement was if you if the jury finds that this was a replica and not a firearm then he's only guilty of the lesser included offense and the government didn't object they objected to something else in the opening statements but there was no objection there so when the going got tough at trial and Mr. Benitez got some traction with his expert witness that it wasn't going to be a it wasn't going to be a toy technically under the law which is precisely the opposite of what they led him to believe and what his very theory of defense was at trial and so under Cancillieri I'm confused who said lesser included offense in opening the defense lawyer the defense lawyer he said what was a lesser included offense he was saying it was simple bank robbery so there's bank robbery with a dangerous device which we all agree it could be a toy as long as it incites and puts into fear that it could be a dangerous weapon in the eye of the person who's being threatened with it we all agree about that I couldn't contest that here in court but when the government as they say in their own words when we accept a higher burden of proof and we plead things with greater specificity than we need to then sometimes it works out and other times it doesn't work out well in this case they wanted to have it both ways yeah it works out when we block him from taking the plea but then at trial when they don't like it and he hires an expert and actually didn't block him from taking the plea the district court ruled against him and said you can plea without admitting it being a firearm but they induced him to not take a plea by telling him it could never come into court because he took the position they could never prove it was actually a firearm so setting aside whether or not the judge's ruling was definitive or not in my view it's completely ambiguous but he still could rely on those assurances and he plainly did look at his opening statement that's what his whole theory of defense was is if I prove that this is not a firearm then I'm only guilty of simple bank robbery the district court and the government for that matter pulled the rug out from his entire defense vitiated the fairness of the proceedings and said well technically it could be a toy that's what they argued to the jury it could be a toy and he could still be convicted of the bank robbery charge so there's no way in the world under cancillary that this is not either A a constructive amendment or B a very prejudicial variance because it gutted his entire theory of defense now I want to say something about the remedy so do you agree with me that the firearm is referenced in the indictment could be a toy firearm yes okay so well no when the indictment charged a firearm which you're saying is the whole problem here because they didn't do that but that indictment could be still a good indictment if it was a toy firearm he could be guilty of that yes if they said it's a toy firearm in the indictment they don't have to say toy firearm they don't know I mean they just say firearm that's enough and they proved a toy firearm they did prove a toy firearm right I would put it in the opposite that he disproved that it was a firearm he hired an expert and disproved that it was a firearm they had an expert that said it was a firearm right they had a rebuttal expert who said actually he didn't say it was a firearm he said it could be converted into something that could fire fire bullets right but the Mr. Benitez's attorney said that it would be highly destructive I just wonder to charge Vikram with toy firearm you have to say toy firearm in the indictment or is firearm enough our position is that if you specify a firearm then you have to prove that it is a firearm and you can't prove and say to the jury well it was just a toy and for that reason your honor a toy firearm constitutes a firearm for purposes of this crime well not when the government no no for purposes of this crime a toy firearm a toy can be person I think it's a contradiction what is a toy firearm okay I mean I think that it's a it's either a firearm or it's a toy and firearms are not toys so I would I would fight the premise of the question but if they had said in the indictment a dangerous device there's no obligation for them to plead that it's a firearm but in this case they plead that it was a firearm and his entire theory of defense was predicated on it not being a firearm and he carried his burden so with that your honors I would say please reverse and remand to the district court thank you very much Mr. Greenlee Mr. Greenlee I see that you're court appointed and the court very much appreciates your work thank you your honor     is a case of Carla Greenlee and she's a defendant and she is a defendant and she is a           defendant and so she is a defendant and you and she are defendants of same case and however we